**FRUEHAUF CORPORATION**
v.
The **UNITED STATES.**

**METRO–GOLDWYN–MAYER, INC.** and
**Consolidated Subsidiaries**
v.
The **UNITED STATES.**
Nos. 91–70, 191–71.

United States Court of Claims.
Decided April 13, 1973.

Ernest Getz, Detroit, Mich., attorney of record, for Fruehauf Corp.; Dickinson, Wright, McKean & Cudlip, Detroit, Mich., of counsel.

Herbert L. Awe, Washington, D. C., attorney of record, for Metro-Goldwyn-Mayer, Inc. and Consolidated Subsidiaries; John P. Lipscomb, Washington, D. C., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Gilbert E. Andrews, Jr., and Joseph Kov-

ner, Washington, D. C., of counsel in No. 191–71.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON PLAINTIFFS' MOTIONS AND DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT

COWEN, Chief Judge, delivered the opinion of the court:

These actions for the refund of income taxes present another of the perplexing questions that often arise with respect to the computation of interest under the provisions of the Internal Revenue Code. The cases were argued together because Count I of Fruehauf's petition and Metro-Goldwyn-Mayer's petition involve similar questions of law and fact. These issues relate to the assessment of interest on potential corporate tax deficiencies and the awarding of interest on corporate tax overpayments. Specifically, we are called upon to decide the proper methods by which to set off the overpayments against the interest due the Government and to determine when that interest becomes a liability for the purposes of the set-off. The issues which are common to both suits are considered in Part I hereof.

Count II of Fruehauf's petition involves a separate and distinct issue from the claim asserted by Metro-Goldwyn-Mayer and is considered in Part II of this opinion.

## I

At oral argument the parties presented a hypothetical statement of facts which they agree is sufficiently similar to the true facts to provide a basis for deciding the legal issues. The hypothetical facts so presented are as follows: [1]

An Internal Revenue Service audit of plaintiffs' 1960 tax returns revealed a "potential" deficiency of $1,100,000. The audits also revealed a large net operating loss for 1963. The 1963 net operating loss was carried back to 1960, and the carryback not only extinguished the "potential" deficiency, but also created an overassessment of $500,000 for 1960.

There is no question that the Government is entitled to interest on the "potential" deficiency running from 1960 to the end of the loss year 1963. This interest amounts to $200,000 and specific statutory authority therefor is found in Section 6601(e) and (g) of the Internal Revenue Code of 1954. After assessing this interest, the Internal Revenue Service applied $200,000 of the $500,000 overassessment in satisfaction of such interest due the Government even though the deficiency interest was not actually assessed until February 14, 1969. Interest on the remaining $300,000 was allowed from September 1, 1963, the first day after the end of the applicable loss year, to February 14, 1969, when the interest due the Government was assessed.

By relating back the interest actually assessed in 1969 to 1963 in order to make the offset, the Service denied plaintiffs interest on the $200,000 for six years, i. e., from the loss year 1963 to 1969. Plaintiffs claim that statutory interest should be awarded on the $200,000 from the loss year to February 14, 1969, the date of the assessment of interest on the deficiency. We agree.

The resolution of this issue depends primarily upon the interpretation of Treasury Regulation § 301.6611–1.[2]

---

[1]. The actual facts pertaining to each plaintiff are set out in the appendices.

[2]. Regulation § 301.6611 is based on Section 6611 of the Internal Revenue Code of 1954, which states in pertinent part:

"§ 6611. *Interest on overpayments*

"(a) *Rate.*—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 percent per annum.

"(b) *Period.*—Such interest shall be allowed and paid as follows:

"(1) *Credits.*—In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken."

This regulation prescribes, in part, that there can be no overpayment of tax until the entire tax liability, including interest, is satisfied:

> § 301.6611–1. *Interest on overpayments.*
>
> (a) *General rule.* Except as otherwise provided, interest shall be allowed on any overpayment of any tax at the rate of 6 percent per annum from the date of overpayment of the tax.
>
> (b) *Date of overpayment.* Except as provided in section 6401(a), relating to assessment and collection after the expiration of the applicable period of limitation, there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which \* \* \* is in excess of the tax liability (including any interest, addition to the tax, or additional amount) and the dates of payment of all amounts subsequently paid with respect to such tax liability. \* \* \*

However, the regulation goes on to provide special rules in the cases of credits:

> (h) *Period for which interest allowable in case of credits—*
>
> (1) *General rule.* If an overpayment of tax is credited, interest shall be allowed from the date of overpayment to the due date (as determined under subparagraph (2) of this paragraph) of the amount against which such overpayment is credited.
>
> (2) *Determination of due date—* \* \* \*
>
> \* \* \* \* \* \*
>
> (v) *Assessed interest.* In the case of a credit against assessed interest, *the due date is the date of the assess-*

*ment of such interest.* [Emphasis added.]

\* \* \* \* \* \*

The Government recognizes that the proper interpretation of the regulation is crucial to the decision in this case and argues that the term "entire tax liability," as used in section (b) thereof, includes interest, whether assessed or unassessed. Thus, it maintains that the interest on the potential deficiency was a liability at the end of the loss year 1963, even though the interest was not assessed until February 14, 1969. If such a construction of section (b) is adopted, it would conflict with section (h)(2)(v) or render the latter section meaningless. In this case, the date of the overpayments by plaintiffs (the day following the last day of the loss year) was September 1, 1963, and section (h) provides that interest on the overpayments shall be allowed to the due date of the amounts against which they are credited. To find the due date, we turn to section (h)(2)(v), which states unequivocally that it is the date the interest is assessed which, in this case, was February 14, 1969. It is our conclusion, therefore, that until the due date of the interest (the date of the assessment of the interest), there is no tax liability as that term is used in the pertinent regulation. This construction of the regulation enables us to read section (b) in harmony with section (h)(2)(v) and thus avoid the conflict that would exist if defendant's view is accepted.

Prior to assessment, the liability for deficiency interest was only a contingency. A contingent liability is not the same as the "potential" liability which resulted from the determination of the basic tax deficiency for the year 1960. The 1960 deficiency was "potential" only because there was an immediate offset-

---

Prior to the Technical Amendments Act of 1958 (P.L. 85–866, 72 Stat. 1606, § 83) § 6611(b)(1) read as follows:

"(1) *Credits.*—In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken, *but if the amount against which the credit is taken is an additional assessment, then to the date of the assessment of that amount.*" [Deleted portion italicized.]

ting carryback loss for 1963. The liability was determined and fixed as of the filing of the 1960 return and as we have said, the Government is entitled to interest on such deficiencies from the due date (which is the date of the filing of the 1960 tax returns) until the end of the loss year. Therefore, it is inherent in the statutory scheme that the due date determines and fixes the liability for both tax and interest.

It was the "current" liability concept that was decisive in Northern Natural Gas Co. v. United States, 354 F.2d 310, 173 Ct.Cl. 881 (1965). In that case, the Internal Revenue Service was restricted from assessing the interest on potential deficiencies pending a determination by the Tax Court of the basic tax due. The parties finally stipulated a settlement in 1961, and the Service tried to relate the satisfaction of the deficiency interest back to 1952, thus avoiding interest on a like amount of overpayment during that time interval. In rejecting the Government's contention, the court stated:

> [P]laintiff "knew" in 1952 * * * that it would most likely be liable for *some* amount [of interest] regardless of section 722 [relief]. However, there was no "current" liability because the Commissioner was restricted from assessing any deficiency during the Tax Court proceeding * * *, and also, because the potential deficiency is based on the "corrected" deficiency which was not determined until 1961. *It would not be proper for us, on these facts, to make an ex post facto credit* of the 1952 remittance against the potential deficiency interest item which was finalized by the Tax Court decision on December 6, 1961. Accordingly, we find that the interest on the potential deficiencies should be deducted from plaintiff's total overpayment of taxes and interest as determined in 1961, rather than from the 1952 remittance. [354 F.2d

at 318, 173 Ct.Cl. at 892. Emphasis added and footnote omitted.]

The instant cases are even stronger for plaintiffs because of the statute and regulation before us. Since there was no interest liability until February 14, 1969, there remained outstanding a net overassessment of $500,000 from 1963 until 1969, which is permitted to draw interest under the provisions of Section 6611 of the Code.

Defendant's cross-motions rely primarily upon Rev.Proc. 60–17, 1960–2 Cum.Bull. 942. This revenue procedure is entitled "Guides and instructions to be followed with respect to the computation of restricted interest under the Internal Revenue Codes of 1954 and 1939." In its brief, defendant quotes the following from the procedure:

> Any part of an overpayment attributable to a carryback loss which is extinguished by a general adjustments deficiency * * * * No interest allowable (In effect, interest is allowed, by terminating interest on the deficiency on the last day of the loss year.)[3]

The defendant asserts that the quoted procedure is appropriate for application under the facts of this case and plaintiffs agree. They concede that they are not entitled to any interest on that portion of the overassessment attributable to the carryback loss that extinguished the potential deficiency of 1960. As previously stated, plaintiffs have also stipulated that the Government is entitled to interest on the potential deficiency running to the last day of the loss year, which was August 31, 1963. Therefore, the quoted procedure does not affect the real issue in these cases.

Although it is not quoted in defendant's brief, there is another section of Rev.Proc. 60–17 which does support defendant's position. It is set forth in a table appearing in Section 3(4) of Rev. Proc. 60–17.[4] This portion of the reve-

3. Defendant's brief in No. 191–71 at 12; the quotation is from a table appearing in § 4(3)(b) of the Rec.Proc., 1960–2 Cum. Bull. 942, 957.

4. 1960–2 Cum.Bull. 942, 951.

nue procedure states that when an overpayment is applied as a credit to unpaid interest due for the same year and for the same type of tax, no interest is allowable. It also states that when the overpayment is applied as a credit to unpaid interest due for another year or another type of tax, interest should be computed from the date of the overpayment to the date of the assessment of the amount to which the credit is applied. We believe that this is the revenue procedure upon which defendant bases its argument. It is defendant's contention that the section of the regulation, upon which plaintiffs rely, relates only to the crediting of overpayments and amounts due for different years and not to the determination of an overpayment for a single year. However, we find nothing in Section 6611(b) of the Code or in Treasury Regulation 301.-6611–1 which authorizes such a distinction. On the contrary, this part of Rev. Proc. 60–17 is at variance with the regulation and is therefore entitled to little or no weight. There is no doubt that the regulation takes precedence over the revenue procedure, and this is acknowledged by the following statement which appears on the first page of the introduction of each Cumulative Bulletin:

> Revenue Rulings and Revenue Procedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations (including Treasury Decisions), but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose. * * *

The Government also argues that section 6611 and the pertinent regulation must be interpreted in accordance with defendant's position in order to carry out the purpose of Section 87 of the Technical Amendments Act of 1958, 72 Stat. 1606. We find no such purpose in our examination of the statute or its legislative history and conclude that the regulation, as we have construed it, fully complies with the intent of Congress. The evil at which the statute was aimed was the disparate running of interest on overpayments and underpayments, and the remedy provided by the Act was termination of the interest on both during any period of time to the extent that they offset each other. The problems associated with the prior law are described in the following portion of the general statement in the Senate Committee Report:

> Section 87—*Correlation of interest where overpayment of tax is credited against underpayment of tax*
>
> (a) *General correlation of interest.* —Under present law situations can arise where, even though underpayments and overpayments offset each other, the Internal Revenue Service collects more interest than it pays or the taxpayer is entitled to more interest than he owes the Government. Section 6611(b)(1) of the code provides, for example, that interest on an overpayment which is credited against an additional assessment is to be allowed from the date of the overpayment to the date of the assessment. *However, interest on an additional assessment which is offset against an overpayment runs from the due date of the return until the credit is scheduled, which may be long after the date the interest on the overpayment is cut off by the assessment of the additional amount.* In such cases, although the underpayment and overpayment offset each other, the Internal Revenue Service collects more interest than it pays. On the other hand, where a taxpayer agrees to a determination and signs a waiver of the restrictions on an assessment, interest on an overpayment may run during the period between the 30th day after the waiver and the issuance of notice and demand while interest on an offsetting deficiency may be suspended. In such a case it is the taxpayer who is entitled to more interest than he owes even though the overpayment and underpayment offset each other.
>
> *The House bill eliminates these erratic differences of present law by*

*terminating the interest both as to the overpayment and underpayment during any period of time to the extent they offset each other * * *.* [Emphasis added.] [1958–3 Cum. Bull. 922, 1020–1021.] [S.Rep.No. 1983, 85th Cong., 2d Sess., pp. 97–100 (1958), U.S.Code Cong. & Admin. News 1958, pp. 4791, 4888.]

The technical explanation in the Senate Report further explains the purpose of the Act:

* * * Interest on a credited overpayment would in either case now run only from the date of the overpayment to the original due date of the amount against which it is credited. Thus, if it is credited against an underpayment antedating the overpayment, no interest would run on the overpayment at all. Since interest would otherwise run on the overpayment from the date of overpayment to the date of refund, interest on the underpayment will stop running as of the date of the overpayment; that is, *when the mutuality of indebtedness arises.* Similarly, *in the case of an overpayment which antedates the due date of an underpayment, interest will run on the overpayment only until such due date, that is, when the mutuality of indebtedness arises.* [1958–3 Cum.Bull. 922, 1156.] [Emphasis added.] [S.Rep. No.1983, 85th Cong., 2d Sess., pp. 234–235 (1958), U.S.Code Cong. & Admin.News 1958, pp. 4791, 5023.]

■ From the foregoing, it seems clear that the real purpose of Section 87 of the Technical Amendments Act of 1958 was to eliminate the running of interest during the time there is a mutuality of indebtedness—a deficiency which is offset by an overpayment in the same amount. In this case, there was no liability for the interest on the potential deficiency and consequently no mutuality of indebtedness until that interest was assessed. The date of the overassessment (overpayment) was September 1, 1963. It antedated the due date of the deficiency interest, which was Feb-

ruary 14, 1969, and therefore plaintiffs are entitled to interest on the overpayment until the latter date.

We recognize that a different result was reached in Citadel Industries, Inc. v. United States, 314 F.Supp. 245 (S.D.N.Y.1970), a case relied upon by defendant. However, that case was decided under the provisions of the 1939 Internal Revenue Code, and there was no regulation under the 1939 Code fixing the due date of assessed interest against which an overpayment is credited. The existence of such a regulation and its application to these cases distinguishes that case from our holding today. For that reason, we do not regard the *Citadel* case as being in conflict with this decision.

## II

Plaintiff Fruehauf Corporation in Count II of its petition raises a second issue based on the same facts as its Count I claim. The Count II cause of action is peculiar to the specific facts of Fruehauf's refund claim and accordingly has no bearing on the claim of plaintiff Metro-Goldwyn-Mayer, Inc. The detailed facts underlying both counts of the Fruehauf petition are set forth in Appendix A, *infra.*

Briefly stated, the facts relevant to Fruehauf's Count II are as follows. After the Internal Revenue Service asserted deficiencies against Fruehauf with respect to its corporate income taxes for the years 1954, 1955, and 1956, the Tax Court determined that Fruehauf had underpaid its taxes for 1954 and 1956, but because of a net operating loss carryback from 1958 (in the amount of $4,270,636.94) Fruehauf had overpaid its taxes for 1955 in the amount of $1,711,087.39. That net amount of overpayment was determined by applying the total amount of the carryback from 1958 against Fruehauf's potential deficiency for 1955 in the amount of $2,559,549.55. After the judgment of the Tax Court became final, the IRS, on December 9, 1966, assessed deficiency interest against Fruehauf for its 1954 and 1956 underpayments, and for its po-

tential deficiency for the year 1955. The deficiency interest for 1955, totaling $389,591.01, was mainly computed from the due date of Fruehauf's 1955 return until the last day of the 1958 loss year. Thereafter, the IRS applied Fruehauf's overpayment for 1955 as determined by the Tax Court ($1,711,087.39), first against its deficiency interest for 1955 ($389,591.01), and the remainder against Fruehauf's underpayment for 1954.

The essence of Fruehauf's Count II argument is that the IRS unlawfully collected $389,591.01 in excess of Fruehauf's net tax liabilities for the years 1954, 1955, and 1956. This occurred, in Fruehauf's view, when the IRS applied $389,591.01 of the $1,711,087.39 overpayment for 1955 determined by the Tax Court against the $389,591.01 of deficiency interest assessed for 1955, prior to crediting the balance of the overpayment against Fruehauf's deficiencies for 1954 and 1956. Fruehauf contends that under Section 6215(a) of the 1954 Code the defendant is precluded from assessing or collecting any part of a tax deficiency disallowed by the final decision of the Tax Court; the taxpayer also says that under Section 6402(a) of the Code, the defendant is authorized to credit any overpayment of tax against any tax liability of the same taxpayer. Fruehauf points out that under the final decision of the Tax Court, Fruehauf had made an overpayment for 1955 in the amount of $1,711,087.39, and underpayments for 1954 and 1956 in the amounts of $1,651,654.58 and $3,176,489.25, respectively. Consequently, Fruehauf argues that under the pertinent Code provisions, the defendant could have and should have applied the entire overpayment determined by the Tax Court for 1955 against the underpayments, also determined by the Tax Court for 1954 and 1956, without attempting to reduce the amount of overpayment in the amount of any other purported liabilities of Fruehauf for 1955. In effect, Fruehauf is contending that the net overpayment determined by the Tax Court for

1955 is the final balance of Fruehauf's liabilities for that year, and the defendant is bound by the Tax Court's decision. Thus, Fruehauf argues that the Government disregarded the pertinent Code provisions as well as the decision of the Tax Court and unlawfully collected from Fruehauf $389,591.01 in excess of Fruehauf's true tax liabilities for 1954, 1955, and 1956. Whereas in Count I Fruehauf is seeking to recover the interest ($185,568.07) that the $389,591.01 of overpayment would have earned between January 1, 1959 and December 9, 1966, Fruehauf in Count II seeks to recover the principal amount of $389,591.01 which it claims the IRS illegally credited against the net 1955 overpayment determined by the Tax Court.

It is the contention of the Government that notwithstanding the merits of Fruehauf's Count II claim (which the defendant disputes), Fruehauf's recovery is precluded because that portion of its claim was never presented to the Internal Revenue Service in any formal or informal claim for refund prior to the commencement of the suit in this court. Thus, the defendant has timely raised as an affirmative defense to Fruehauf's Count II claim the so-called substantial variance rule. We have concluded, after a careful examination of Fruehauf's refund claims filed with the Service for the years 1954, 1955, and 1956, that the Government's contention is correct and that the arguments Fruehauf now makes with respect to Count II were never even suggested in any of its refund claim documents.

Fruehauf filed with the IRS timely claims for refund for each of the years ending December 31, 1954, 1955, and 1956. Each of the claims presented in detail the common set of facts that form the basis of the claims presented in Counts I and II of the petition herein. Each of the claims also stated at considerable length the legal basis for recovery presented by Count I of the petition. The amount of the refund requested in each of the claims was $185,278.92

("Plus interest and such greater amount as is refundable by law") which is very close to the $185,568.07 sued for in Count I. As previously stated, however, the argument presented here with respect to Count II, as outlined above, was never presented or suggested in any of the claim documents. Therefore, it must be concluded that the Internal Revenue Service had no notice of the contentions raised in Count II until Fruehauf's petition was filed in this court on March 12, 1970.

We have frequently held that a ground for refund may not be asserted in a tax refund suit in this court that is at variance with the grounds for refund presented to the IRS. Commercial Solvents Corp. v. United States, 427 F. 2d 749, 753–754, 192 Ct.Cl. 339, 347, cert. denied, 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970); Union Pac. R.R. v. United States, 389 F.2d 437, 442, 182 Ct.Cl. 103, 108–109 (1968) and cases cited therein. The scope of the variance rule and the reasons underlying it have been set forth at considerable length in the cases cited and need not be reiterated here. It is sufficient to say that the rule is designed to prevent surprise, to give the Internal Revenue Service notice of the claim so as to permit an administrative investigation thereof, and to allow the Service the opportunity to correct errors and limit the scope of ensuing litigation. Those objectives would be frustrated were we to allow Fruehauf to proceed on the merits of its Count II contentions.

Fruehauf's Count II claim is not aided by a showing that all the facts material thereto were made available to the Internal Revenue Service in the several refund claims. The same facts underlie Count I, and the Service does not have the burden of divining all possible grounds for refund a taxpayer might assert on a given set of facts. Union Pac. R.R., *supra,* 389 F.2d at 445, 182 Ct.Cl. at 113.

The amount of the refund requested in Count II, $389,591.01 plus interest, is, as previously noted, substantially in excess of the amount requested in the refund claim documents. The notation in the claims "Plus * * * such greater amount as is refundable by law" adds nothing to indicate the grounds on which the claim is made.

In all essential respects, Fruehauf's claim for refund with respect to Count II is as fatally deficient as the second and third counts of the taxpayer's amended petition in *Commercial Solvents Corp., supra.* Fruehauf did not provide the Internal Revenue Service with timely notice of the ground for refund now asserted in Count II, and its petition must be dismissed with respect to Count II. In view of this disposition of that portion of Fruehauf's claim, it is unnecessary to reach the merits thereof.

## III

For the reasons stated in the foregoing opinion, Fruehauf's motion for summary judgment on the claim asserted in Count I of its petition in Docket No. 91–70 and Metro-Goldwyn-Mayer's motion for summary judgment on its claim in Docket No. 191–71 are granted, and defendant's cross motions for summary judgment are denied. The cases are remanded to the trial commissioner for determination of the amount of recovery pursuant to Rule 131(c).

Fruehauf's motion for summary judgment on the claim asserted in Count II of its petition in Docket No. 91–70 is denied; defendant's cross motion on Count II of the petition in that case is granted, and Count II of the petition is dismissed.

DAVIS, Judge (concurring):

In joining the court's opinion, I wish to stress—on the question dealt with in Part I—that the problem arises solely because of the Treasury's decided lack of clarity in drafting Treas.Reg. § 301.-6611–1. If subsection (b) stood without (h)(2)(v), I would have little doubt, because of the explicit parenthesis in (b), that defendant is correct in its argument here. But (h)(2)(v) is also very

explicit, and at the same time is the more specific of the two. All that defendant can do with it is to say that—despite its unqualified language and general context—it has no application to the same tax for the same year. This pushes too far to be an acceptable rationalization of the self-created disharmony in § 301.6611–1. Where the Treasury itself puts contradictions into the same section of a regulation, and it is nearly impossible or at least very hard for a court to read the conflicting provisions together without great strain,[1] I would let the Government bear the brunt of its error until the regulation is altered. For that reason I accept the court's reconciliation of (b) and (h)(2)(v), even though it is not free from difficulties of its own.

### APPENDIX A

The Facts Material to the Tax Refund Claim of FRUEHAUF CORPORATION V. UNITED STATES (No. 91–70)

The following is a summary of the material, actual facts underlying the tax refund claim of *Fruehauf Corporation* (No. 91–70), as agreed upon by the plaintiff and defendant in their Stipulation of Facts filed on December 6, 1971, and in their Supplemental Stipulation of Facts filed on May 31, 1972.

Plaintiff Fruehauf Corporation, a Michigan corporation, uses the calendar year as a reporting period for its Federal corporate income taxes.

In 1960, Fruehauf received notice from the Commissioner of Internal Revenue of deficiencies in its corporate income taxes for the years 1954, 1955, and 1956, based upon a change in Fruehauf's method of accounting for used trailer inventories (which had been initiated by the Internal Revenue Service (IRS)).

Fruehauf contested the asserted deficiencies before the Tax Court of the United States. On July 24, 1964, the Tax Court entered its judgment that Fruehauf had underpaid its taxes for the years 1954 and 1956 in the amounts of $1,651,654.58 and $3,176,489.25, respectively. The Tax Court further determined, however, that Fruehauf had overpaid its taxes for the year 1955 in the amount of $1,711,087.39. The decision of the Tax Court was affirmed by the United States Court of Appeals for the Sixth Circuit, and on October 10, 1966, the Supreme Court denied Fruehauf's petition for a writ of certiorari.

The 1955 overpayment of $1,711,087.-39 determined by the Tax Court arose because of the carryback of a 1958 net operating loss to 1955, reduced by an excessive tentative net operating loss carryback from 1957 to 1955 previously taken by Fruehauf. Prior to taking into account the 1957 and 1958 carryback factors, a tentative deficiency existed for 1955 in the amount of $2,193,095.27. That tentative deficiency was increased in the amount of $366,454.28 by reason of an excessive 1955 refund in that amount arising from the excessive 1957 tentative net operating loss carryback. The total tentative deficiency for 1955 of $2,559,549.55 ($2,193,095.27 plus $366,454.28) was eliminated by $4,270,636.94 of 1955 tax attributable to the 1958 net operating loss carryback.

On December 9, 1966, the Detroit District Director of Internal Revenue assessed Fruehauf for the years 1954,

---

1. As in the present case, the resolution of the contradiction can be made very difficult by the opacity of the general Congressional purpose with respect to the particular subject matter and the lack of helpful legislative or administrative background. Defendant emphasizes the Technical Amendments Act of 1958, 72 Stat. 1606, as showing the general Congressional purpose. It is agreed, however, that that statute does not apply of its own terms to the precise issue here, and as the court points out the aim of the provision was to eliminate the running of interest during a period of mutuality of indebtedness. The question then becomes when did such mutuality arise, and we are brought directly back to the contradiction in § 301.6611–1.

1955, and 1956 in the following amounts:

### 1954

| | |
|---|---|
| Tax | $1,651,654.58 |
| Interest | 532,985.39 |
| Total | $2,184,639.97 |

### 1955

| | |
|---|---|
| Interest | $389,591.01 |

### 1956

| | |
|---|---|
| Tax | $3,176,489.25 |
| Interest | 1,852,284.85 |
| Total | $5,028,774.10 |

Of the $389,591.01 of interest assessed for 1955, $367,628.86 represents interest computed from the due date of the 1955 return to the last day of the 1958 loss year on the tentative 1955 deficiency of $2,193,095.27. The remaining portion ($21,962.15) of the $389,591.01 interest assessed for 1955 represents interest computed from January 1, 1958 to December 31, 1958, on the excessive 1955 refund of $366,454.28 attributable to the excessive tentative net operating loss carryback from 1957.

On or about December 13, 1966, a Form 17–A Statement of Tax Due was issued, setting forth for 1954 and 1956 the amounts of tax and interest due as assessed on December 9, 1966, and balances due of $2,184,639.97 and $5,028,-774.10, respectively. Also, on or about December 13, 1966, Fruehauf received a Form 1331 Notice of Adjustment detailing the application made by the IRS of the $1,711,087.39 overpayment determined by the Tax Court for 1955. That form reflects that $389,591.01 of the $1,711,087.39 overpayment was credited against the $389,591.01 of deficiency interest assessed against Fruehauf for 1955, and that $1,321,496.38 of the overpayment (*i. e.*, the remainder thereof) was credited against the $1,651,654.58 of tax assessed against Fruehauf for 1954. Thereafter, a Form 17 Corrected Bill was issued for 1954 showing that the $2,184,639.97 of tax and interest previously assessed as due for 1954 had been reduced by $1,321,496.38 by reason of the crediting of a portion of the 1955 overpayment.

Of the $1,711,087.39 of 1955 overpayment determined by the Tax Court, $389,591.01 ($1,711,087.39 less the $1,321,496.38 credited against the 1954 deficiency) was credited against the $389,591.01 of deficiency interest assessed for 1955. No interest was received by Fruehauf on the $389,591.01 portion of the 1955 overpayment so credited against the same amount of 1955 deficiency interest.

On December 23, 1966, Fruehauf paid the following amounts to the IRS:

| Year | Tax | Interest | Total |
|---|---|---|---|
| 1954 | $330,158.20 | $532,985.39 | $863,143.59 |
| 1956 | 3,176,489.25 | 1,852,284.85 | 5,028,774.10 |
| Total | $3,506,647.45 | $2,385,270.24 | $5,891,917.69 |

Fruehauf filed timely refund claims with the IRS for the years 1954, 1955, and 1956 on March 6, 1968. Fruehauf's refund claims were disallowed in full for 1955 on October 17, 1968, and for 1954 and 1956 on October 22, 1968.

The $389,591.01 portion of the 1955 overpayment determined by the Tax Court that was credited against the $389,591.01 of deficiency interest for 1955 would have earned $185,568.07 of interest between January 1, 1959 and December 9, 1966 (the date of the assessment of the 1955 deficiency interest) had the IRS recognized Fruehauf's entitlement to interest on that portion of

the overpayment over that period of time.

## APPENDIX B

The Facts Material to the Tax Refund Claim of METRO–GOLDWYN–MAYER, INC. V. UNITED STATES (No. 191–71)

The following is a summary of the material, actual facts underlying the tax refund claim of *Metro-Goldwyn-Mayer, Inc.* (No. 191–71), as agreed upon by the plaintiff and defendant in their Stipulation of Material Facts filed on March 30, 1972.

Plaintiff Metro-Goldwyn-Mayer, Inc. (MGM), which brings this suit on its own behalf and on behalf of its consolidated subsidiaries, filed consolidated Federal income tax returns for the fiscal years ended August 31, 1959 and 1960, and paid the tax liabilities shown thereon.

Thereafter, the Internal Revenue Service (IRS) initiated an audit of MGM's returns for the fiscal years ended August 31, 1959, 1960, 1961, 1962, 1963, and 1964. By reason of that audit, it was determined that there were potential deficiencies of tax for fiscal years 1959 and 1960, in the amounts of $1,010,729.37 and $1,287,642.52, respectively. The audit also determined that there were net operating losses for MGM's fiscal years ending August 31, 1961, 1962, and 1963. The audit further determined that by reason of the carryback of the net operating losses from fiscal years 1961, 1962, and 1963, and the application of those losses to the potential deficiencies for fiscal years 1959 and 1960, there was a net overassessment of tax in the amount of $114,430.-10 for the fiscal year ending August 31, 1959, and a net overassessment in the amount of $521,816.63 for the fiscal year ending August 31, 1960.

The District Director (for Manhattan, New York City, where the returns were filed) computed deficiency interest in the amount of $223,092.36 on the potential deficiency for fiscal year 1959 from the due date of the return to the last day of the applicable loss year or years in accordance with Section 6601(e)(1) of the Internal Revenue Code of 1954. The District Director likewise computed interest in the amount of $215,847.69 on the potential deficiency for fiscal year 1960. The interest on the potential deficiencies for fiscal years 1959 and 1960 was assessed by the District Director on February 14, 1969.

Also on February 14, 1969, the District Director determined the application of the overassessments for fiscal years 1959 and 1960 as part of the final satisfaction of MGM's tax liabilities. The net overassessment for the year ending August 31, 1959 in the amount of $114,430.10 was applied to the interest computed on the potential deficiency for the same fiscal year in the amount of $223,092.36. This left a remaining balance of the fiscal year 1959 deficiency interest of $108,662.26.

The net overassessment of $521,816.63 for fiscal year 1960 was applied first against the interest ($215,847.69) computed on the fiscal year 1960 potential deficiency. $108,662.26 of the fiscal year 1960 overassessment was then credited against the remaining balance ($108,662.26) of the deficiency interest computed on the potential deficiency for fiscal year 1959. An additional $80,394.34 of the 1960 overassessment was applied against interest computed on a potential deficiency of MGM for fiscal year 1961; and another $80,279.49 of the fiscal year 1960 overassessment was applied against a tax deficiency for the year ending August 31, 1964. The remainder of the 1960 overassessment ($36,632.85) was refunded.

The IRS allowed MGM interest on the portions of the 1960 fiscal year overas-

sessment credited against a part of the deficiency interest for fiscal year 1959, and against the deficiency interest for fiscal year 1961, computed from the last day of the applicable loss year (September 1, 1963) to the date of assessment of the deficiency interest for 1959 and 1961 (February 14, 1969). MGM was likewise allowed interest on the portion of the fiscal year 1960 overassessment that was refunded computed from September 1, 1963 to February 14, 1969. MGM was allowed interest on the portion of the 1960 overassessment credited against the 1964 deficiency computed from September 1, 1963 to November 15, 1964.

However, the IRS did not allow MGM any interest on the overassessment for the year ending August 31, 1959, that was entirely offset by the interest computed on the potential deficiency for fiscal year 1959. Similarly, MGM was not allowed any interest on the portion of the overassessment for the year ending August 31, 1960, that was credited against the interest computed on the potential deficiency for fiscal year 1960.

On August 7, 1969, MGM filed timely claims for refund with the IRS to recover interest, computed from September 1, 1963 to February 14, 1969, on the overassessment for fiscal year 1959, and for the portion of the fiscal year 1960 overassessment credited against the deficiency interest for 1960. More than 6 months elapsed, prior to the filing of MGM's petition in this court, during which MGM received no statutory notice of disallowance.

Plaintiff seeks interest in the amount of $37,453.13 (computed from September 1, 1963 to ·February 14, 1969) on the 1959 fiscal year overassessment, and interest in the amount of $70,647.24 (also computed from September 1, 1963 to February 14, 1969) on that portion of the fiscal year 1960 overassessment credited against the interest computed on the fiscal year 1960 potential deficiency.