Philip G. KUEHN and Margery Kuehn

v.

The UNITED STATES.

No. 38–73.

United States Court of Claims.

July 13, 1973.

As Amended on Denial of Rehearing
Sept. 25, 1973.

George D. Webster, Washington, D. C., attorney of record, for plaintiffs.

Gilbert E. Andrews, with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Joseph Kovner, Washington, D. C., and Charles E. Auslander, Jr., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

ON DEFENDANT'S MOTION TO DISMISS

BENNETT, Judge:

The matter to be decided is defendant's motion to dismiss the petition on the ground that the court lacks jurisdiction due to the plaintiff's failure to file a timely claim for tax refund. The primary issue to be resolved is whether, on the facts admitted for purposes of the motion, it can be said that the plaintiff

filed a valid "informal" claim for refund within the period required by statute. Upon consideration of the motion and briefs, without oral argument, it is concluded that the plaintiff did not file a timely informal refund claim and that the motion to dismiss the petition should be granted.

On April 14, 1964, the plaintiff[1] organized a Texas corporation known as the Academy of Electro Data Systems, Inc., of which he was the sole stockholder. On July 29, of the same year, the plaintiff filed an election pursuant to IRC § 1372 (1954) to treat the Academy as a small business under IRC §§ 1371–79, effective for the taxable year beginning January 1, 1964. The IRS District Director, in a letter dated November 4, 1964, notified the plaintiff that the election was considered valid, effective July 1, 1964. During 1964 and 1965, the Academy showed net operating losses which were reflected in the plaintiff's individual returns for those years. Thereafter, on December 12, 1966, the IRS notified the plaintiff that the election made in 1964 has not been timely filed and was therefore considered invalid. The plaintiff's protest of this change was rejected by the IRS.

After dealing with the net loss on his 1965 return, the taxpayer attempted to take advantage of the unused balance by carrying it forward and later deducting it on his 1968 tax return. The attempted deduction in 1968 of the 1965 loss was improper, however, since the net loss should first have been carried back 3 years to 1962 and then 1963, making these the years in which adjustments should have been made to the taxpayer's returns. Both the plaintiff and the defendant are now agreed that this was the proper way to treat the net loss. The plaintiff sought to take advantage of these adjustments by filing formal claims for refund on January 22, 1971, in

which he claimed $8,224.25 for 1962 and $11,731.88 for 1963. The IRS rejected these claims on the ground that the Academy had not qualified for small business treatment in 1964 and 1965; therefore, the plaintiff was not entitled to take advantage of the Academy's loss. The plaintiff filed his petition in this court on February 16, 1973, in which he challenged the validity of the IRS determination.

The defendant argues that since section 7422(a) of the Code requires the filing of a valid claim for refund as a condition precedent to the maintenance of any suit for the refund of taxes, and since section 6511(d)(2)(A), defining the limitation period within which claims for refunds due to net operating loss carrybacks must be filed, required the filing of such a refund claim in this case prior to April 15, 1969; the taxpayer's claim, filed January 22, 1971, was untimely. The plaintiff admits to not having filed a timely *formal* claim for refund by the end of the limitations period on April 15, 1969, but urges instead that his 1968 income tax return, filed April 14, 1969, in which he attempted to carry forward his 1965 loss as a deduction, when coupled with information available to the IRS, constituted an acceptable informal claim for refund of his 1962 and 1963 taxes. Any deficiencies in the form of the refund claim are claimed to be retroactively cured by the formal claims filed on January 22, 1971.

■■ There have been numerous cases dealing with the issue of what constitutes an informal refund claim. " * * [E]ach case must be decided on its own peculiar set of facts with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made." Newton v. United States, 163 F.Supp. 614, 619, 143 Ct.Cl. 293, 300 (1958). The general test is whether "[t]he Com-

---

1. The petition was amended to include the plaintiff's former wife, Margery Kuehn (presently Mrs. David V. Uihlein), as a party plaintiff since the 1962 and 1963 tax returns now under consideration were filed jointly by the named plaintiff and his then wife. For convenience, party-plaintiffs will be referred to in the singular.

missioner's attention should have been focused on the merits of the particular dispute" by the alleged informal claim. Angelus Milling Co. v. Commissioner, 325 U.S. 293, 297, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945); *see also* United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). The court, therefore, in dealing with this issue must carefully examine the facts presented in order to determine if the Commissioner did have notice, sufficient to focus his attention on the merits of the plaintiff's claim.

The facts involved in Byron Weston Co. v. United States, 87 F.Supp. 955, 115 Ct.Cl. 232 (1950), appear to come closest to those now before the court. The taxpayer there suffered a $40,000 loss in 1942, the unused portion of which it first tried to deduct from its 1943 income by carrying forward the net loss. According to the carryback rules then in effect, the 1942 loss should have been deducted from 1941 income. By the time the plaintiff realized the mistake, the time for filing a claim applicable to 1941 had lapsed. The taxpayer argued that the attempted deduction in 1942 constituted an informal claim for refund of the 1941 taxes. The court did not agree, saying that "no claim for refund of *1941* taxes was ever filed until after the running of the statute." [Emphasis in original, 87 F.Supp. at 957, 115 Ct.Cl. at 235.]

The plaintiff argues that a similar conclusion should not be reached in this case, citing the more recent decision of the court in American Radiator & Stand. Sanitary Corp. v. United States, 318 F.2d 915, 162 Ct.Cl. 106 (1963). In that case, the taxpayer had mentioned in three places on his 1949 tax return that he had certain amounts that were refundable due to the excess cost of replacing inventory involuntarily lost in prior years. This written component, when taken together with information available to a revenue agent, who had audited the taxpayer's accounts and knew the precise amounts and years involved for the excess cost of replacing the lost inventory, was sufficient to conclude that "before the expiration of the three-year period, a responsible employee of the Internal Revenue Service had 'notice fairly advising the Commissioner of the nature of the taxpayer's claim.'" 318 F.2d at 921, 162 Ct.Cl. at 116. The plaintiff does not discuss the holding in *Byron Weston,* but contends that the decision in *American Radiator* established the new rule that an informal refund claim need only contain a written component (the 1949 tax return), and the knowledge of the revenue agent as to the specifics of the years and amounts in question in order to be valid. The taxpayer contends that both of these elements are present in the case now before the court since his attempt to take the deduction in 1968 constituted the written component which, when combined with information available or known by IRS agents, would afford the IRS the necessary notice making the 1968 return a valid informal refund claim. The issue, therefore, is whether these facts more nearly resemble those in *Byron Weston* or those in *American Radiator,* assuming that both are still good law.

■■ The court's opinion in *American Radiator* contains a lengthy analysis of the cases that had been decided up to 1963, which dealt with the same issue, including *Byron Weston.* Those decisions were relied upon by the court rather than distinguished or reversed by it. The distinctions between *American Radiator* and this case (or *Byron Weston*) are most clearly drawn by looking to the content of the written memorandum in each case. In *American Radiator* the taxpayer had noted on his 1949 tax return that he was due certain estimated refunds as the result of the excess costs incurred in replacing inventory lost in prior years. It was more than a simple attempt to take a deduction which was not allowed, as in this case and *Byron Weston.* The specific amounts and the years subject to the refund were not mentioned on the return, but were known to the IRS agent handling the taxpayer's audit, who expected formal refund claims to be filed. Therefore, the defendant was not misled by the absence of these items in the return itself. The crucial

point was that the 1949 return made it clear, at that time, that the plaintiff was claiming credit for a tax refund. The same is not true in this case. Here, the plaintiff's attempt to take the deduction in 1968 did not provide notice to the defendant that it was also seeking, in the alternative, a refund applicable to 1962 and 1963, although the IRS may have known that this was likely. It has been held on numerous occasions that, simply because the IRS has access to information that could make it think the taxpayer might desire to claim a refund, "the Internal Revenue Service is not required to weigh circumstantial evidence in order to determine whether a taxpayer is asking for a tax refund." Barenfeld v. United States, 442 F.2d 371, 375, 194 Ct.Cl. 903, 912 (1971); *see also* Fruehauf Corp. v. United States, 477 F.2d 568, 201 Ct.Cl. —— (1973); Commercial Solvents Corp. v. United States, 427 F.2d 749, 192 Ct.Cl. 339, cert. denied, 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed. 2d 247 (1970); Rosengarten v. United States, 181 F.Supp. 275, 149 Ct.Cl. 287, cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). "Availability of information is not equivalent to notice that a claim is asserted based on that information. That claim must somehow be communicated to the Service." Union Pac. R. R. v. United States, 389 F.2d 437, 445, 182 Ct.Cl. 103, 113 (1968). It seems necessary to conclude that this plaintiff had to do something more than merely attempt to deduct an item in 1968, if he were going to give the IRS clear notice of his intent to claim a refund applicable to 1962 and 1963. To reach the conclusion urged by this plaintiff could lead to the conclusion in other cases that anytime a taxpayer's deduction is disallowed by the IRS and the taxpayer pays the amount at issue, the IRS would be required to assume that the taxpayer had made an informal claim for refund simply by claiming the deduction. Such a result would be unworkable, and would circumvent the purpose behind the requirement that a refund claim clearly inform the IRS that a refund is being sought.

For the above reasons, it is concluded that the taxpayer's attempt to take the deduction in 1968 did not constitute an informal claim for refund. The taking of further evidence, as requested by the plaintiff, in order to determine precisely what the IRS agents knew of the plaintiff's claim up to April 15, 1969, is unnecessary once it is determined that the written memorandum of the claim (the 1968 tax return) was insufficient. One further argument raised by the plaintiff in opposing the defendant's motion to dismiss appears to be an afterthought, considering the abbreviated treatment it received from both parties, but it should, nonetheless, be briefly discussed.

■ Plaintiff's last argument relies on sections 1311–15 (the mitigation provisions) of the Code, which sections if applicable would allow the taxpayer to obtain the benefit of the 1965 loss even if the statute of limitations is found applicable in this case. The taxpayer leans specifically on section 1312(4) as the basis for seeking an adjustment. Section 1312(4) sets forth as one of the circumstances of adjustment in mitigation of the statute of limitations a situation where "[t]he determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer." The taxpayer is arguing here that the IRS disallowance of his attempt to deduct the 1965 loss in 1968 was, to use the words of the Code, a "determination which disallowed a deduction which should have been allowed to, but was not allowed to, the taxpayer for another taxable year." In other words, he is contending that because the deduction was disallowed in 1968, and it should have been allowed for 1962 and 1963, section 1312(4) allows an adjustment to be made to the prior years even though closed at the time the 1968 deduction was disallowed.

The difficulty with the taxpayer's argument is that it ignores the statutory requirement that there be a "determination" within the meaning of the mitigation sections. Section 1313, which immediately follows the section upon which taxpayer relies, provides:

§ 1313. Definitions.

(a) Determination.

For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

(2) a closing agreement made under section 7121;

(3) a final disposition by the Secretary or his delegate of a claim for refund.

\* \* \* \* \* \*

(4) under regulations prescribed by the Secretary or his delegate, an agreement for purposes of this part, signed by the Secretary or his delegate and by any person, relating to the liability of such person (or the person for whom he acts) in respect of a tax under this subtitle for any taxable period.

See also, Rev.Rul. 73–82, 1973 Int.Rev. Bull. No. 7, at 36–37. None of the facts alleged by the taxpayer constitutes a determination with respect to the taxpayer's 1968 return.

For all of the above reasons, the defendant's motion to dismiss is granted. The plaintiff's petition is dismissed.