BENNETT, Circuit Judge.
 

 Appellant (taxpayer) seeks a refund of taxes paid for the tax years 1960 and 1961 by reason of alleged net operating loss carrybacks from 1963 and 1964, respectively. The United States Claims Court
 
 [1]
 
 held that (1) the 1960 claim (via the 1963 carry-back) was barred by appellant’s failure to file a sufficient administrative claim for refund, as required by section 7422(a) of the Internal Revenue Code
 
 [2]
 
 and Treasury Regulation § 301.6402-2(b)(l) (1963); and (2) the 1961 claim (via the 1964 carryback) was barred by the United States Court of Claims grant of partial summary judgment in favor of the government. We
 
 affirm.
 

 Facts
 

 In November 1962 appellant entered into a letter contract with the United States Air Force to engineer, design, and fabricate operational prototypes of a geodetic and photo mapping system and a ground data processing subsystem.
 
 [3]
 
 The letter contract was superseded by a formal, negotiated contract in April 1963, which was followed by a production contract in March 1964. The formal contract was for a fixed sum of $6,718,480, but was subject to the standard “Changes” clause.
 
 [4]
 
 In the course of per
 
 *1205
 
 formance of the contract, numerous changes were incorporated into it. On December 30, 1964, appellant requested from the contracting officer an equitable adjustment of $5,528,205 (as revised on June 30, 1965) as a result of these changes. On January 10, 1966, the contracting officer issued his final decision allowing appellant only an additional $123,780. Appellant appealed to the Armed Services Board of Contract Appeals and, on September 26, 1967, the parties agreed to a total increase in the contract price of $2,000,000 in lieu of the $123,780.
 

 In the meantime, appellant had to file income tax returns for the years of performance of the contract. Appellant chose to compute its contract income for 1963 through 1965 by the percentage of completion method, one of the methods of reporting income from long-term contracts, authorized by Treasury Regulation § 1.451-3 (1957). Basically, appellant used its total estimated income from the contract, rather than the specified contract amount, in reporting its income for these years. For the three tax years 1963 through 1965 appellant included an aggregate of $10,142,787 in gross income attributable to the Air Force contract. When the contracting officer issued his final decision, appellant determined that the “income” reported from the contract actually resulted in a loss. As a consequence, appellant determined it had a $4,359,000 loss on the contract and deducted this amount on its 1966 return.
 

 The period of limitations for filing a claim for refund for 1963 was due to expire on June 30, 1967 (as extended by agreement). On April 13, 1967, appellant filed a claim for refund of its 1960 taxes, such refund resulting from the alleged net operating loss in 1963.
 

 As mentioned earlier, in 1967 the parties reached a settlement for a $2,000,000 increase in the contract price. This necessitated a further recomputation of the loss on the contract. As a result, appellant deducted $3,318,000 on its 1967 tax return in lieu of the $4,359,000 loss reported on its 1966 return.
 

 On May 13, 196, appellant filed a claim for refund of its 1961 taxes based upon an asserted net operating loss carryback from 1964. No claim for refund was ever filed for an asserted overinclusion of income for 1965.
 
 [5]
 

 The Internal Revenue Service (l.R.S. or Service) never sent statutory notices of dis-allowance for the 1960 and 1961 claims.
 
 [6]
 
 Instead, the l.R.S. allowed the appellant’s $3,318,000 deduction on its 1967 return on audit without adjustment. The trial judge found, however, that this present suit for refund seeks to utilize the same losses as formed part of the basis for the deduction
 
 *1206
 
 reported, and allowed, on the 1967 return.
 
 [7]
 
 The period for assessment of a deficiency for appellant’s 1967 tax year expired on September 30, 1972 (as extended by agreement). Appellant filed its original petition in the United States Court of Claims on September 14, 1973.
 

 The 1960 Claim (via the 1968 Carryback)
 

 The Claims Court held that the 1960 claim (via the 1963 carryback) was barred because appellant had not filed a sufficient claim for refund. In essence, the trial judge found that the formal claim filed and the surrounding circumstances indicated that the claim was contingent upon the disallowance of the later (1967) deduction for the contract losses, and since this event did not occur, the claim did not adequately apprise the I.R.S. of the grounds for refund.
 

 Section 7422(a) provides that no suit for the refund of taxes shall be maintained until a claim for refund has been duly filed with the Secretary of the Treasury according to the regulations established pursuant to law. Treasury Regulation § 301.6402-2(b)(1), promulgated under the above statutory authority, provides that the claim must “set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof,” and that no refund will be allowed “except upon one or more of the grounds set forth in the claim.” It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.
 
 See, e.g., United States v. Felt & Tarrant Co.,
 
 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931);
 
 Armstrong v. United States,
 
 681 F.2d 774, 775 (Ct.Cl.1982);
 
 National Newark & Essex Bank v. United States,
 
 410 F.2d 789, 792 (Ct.Cl.1969).
 

 The most important factor to be considered concerning the sufficiency of the 1960 claim is the wording of the formal refund claim filed by appellant. It states:
 

 There was erroneously included in the 1963 income of Kollsman Instrument Corporation (“Taxpayer”) the amount of 1,150,000 for the following reasons:
 

 During the years 1963, 1964, and 1965, Taxpayer was performing services for the United States Air Force in the development of AN/USQ-28 Geodetic and Photo Mapping System. As a result of those services, the Taxpayer recorded upon its books of account amounts attributable to the performance of said services during those years as follows:
 

 Year Amount of Claim
 

 1963 $1,179,326
 

 1964 1,750,497
 

 1965 1,537,520
 

 $4,467,343
 

 As a result, at the opening of business on January 1, 1966, Accounts Receivable of Taxpayer included the aforementioned amount of $4,467,343 which Taxpayer had included among its assets in the belief that all of the events had occurred which fixed the right of the Taxpayer to receive income from those services and in the further belief that the amount of that claim could be determined with reasonable accuracy.
 

 During 1966, the Taxpayer attempted to procure from the United States Air Force an admission affirming that it did in fact owe the Taxpayer the amount so recorded on its books of account; but this attempt was unsuccessful when on January 10,1966 a determination was made by the Contracting Officer that Taxpayer only had a right to receive the amount of $108,343 instead of the aforementioned amount of $4,467,343 which was determined as follows:
 

 
 *1207
 
 Year Applicable To Claim Determined to Be Allowed Balance
 

 1963 $1,179,326 $29,326 $1,150,000
 

 1964 1,750,497 42,497 1.708.000
 

 1965 1,537,520 36,520 1.501.000
 

 Accordingly,
 
 in computing its taxable income for 1966, the Taxpayer eliminated from its assets the amount of $4,359,000 and charged off the claim which it had recorded against the United States Air Force.
 
 The amount of $4,359,000 was the adjusted basis of said portion of the claim as determined by the application of Section 1011 of the Internal Revenue Code of 1954.
 

 Although the
 
 Taxpayer believes that the aforementioned treatment is proper in the circumstances, it also recognizes the alternative possibility
 
 that the following provisions of Reg.Sec. 1.451-l(a) might apply:
 

 « * * * jn gagg 0f compensation for services, no determination can be made as to the right to such compensation or the amount thereof until the services are completed, the amount of compensation is ordinarily income for the taxable year in which the determination can be made. * * * (I)f a Taxpayer ascertains that an item was improperly included in gross income in a prior taxable year, he should, if within the period of limitation, file claim for credit or refund of any overpayment of tax arising therefrom.” * * *
 

 This claim for refund
 
 is filed in an attempt to comply with the above Regulation Provision and
 
 is predicated upon the possibility that the $1,150,000 which Taxpayer included among its assets on account of the aforementioned claim in the year 1963 should not have been so included but rather should have reduced the 1963 taxable income of the Taxpayer.
 
 (Emphasis added.)
 

 At the outset, it should be noted that the above claim is sufficiently detailed to apprise the I.R.S. of the factual basis for the claim before it. The “claim,” however, is ambiguous at best and occasionally contra
 
 dictory
 
 — e.g., the statement that “the Taxpayer believes that the aforementioned treatment [whereby appellant overstated income in 1963 through 1965 and deducted this amount in a later year] is proper in the circumstances” and the characterization of the claim for refund as an “alternate possibility” — suggesting a choice between treatments rather than an intention to both deduct the overstated income in a later year
 
 and
 
 claim a refund for part of the amount which comprised the basis for that deduction. The claim also contains the tentative statement that it is “predicated upon the possibility that the $1,150,000 which the taxpayer included among its assets * * * should not have been so included but rather should have reduced the 1963 taxable income of the taxpayer.”
 

 The trial court concluded that the above language was “not an absolute claim for reduction of plaintiff’s 1963 income but a claim to be operative only on the occurrence of the ‘possibility’ that the Internal Revenue Service disallowed plaintiff’s preferred treatment, a post-contract-completion loss deduction. Such a disallowance never occurred; in fact, the exact opposite took place — the deductions were allowed. Nowhere did the plaintiff put the Service on notice that even if it allowed the deduction in previously reported contract income as a loss plaintiff would still demand exclusion of the same item from 1963 income.” Slip op. at 12.
 

 Appellant argues that “there is nothing in ‘the claim as framed’ which made it contingent or conditional on anything.” While it is true that there is no unequivocal language to the effect that the claim is operative only upon the disallowance of the later deduction, it is also true that the claim does not put the Service on notice that the taxpayer means to utilize both the later deduction and the refund claim. In light of the ambiguity of the claim itself, we believe it proper to examine the “other evidence” relied upon by the Claims Court to support its conclusion that the claim was contingent upon an event which never occurred.
 

 The trial court principally relied upon testimony by three revenue agents that appellant’s tax manager, Mr. Krugly, had as
 
 *1208
 
 sured them that the refund claim was merely
 
 “protective"
 
 — i.e., designed to preserve the claims from the running of the limitations period in the event that the later deduction was disallowed. The testimony of the revenue agents was supported by contemporaneous reports consistent with the testimony given. Mr. Krugly, however, denied that there was ever an express understanding that the refund claims would be abandoned if the later deduction was permitted. The trial judge obviously found the testimony of the three revenue agents to be more credible than that of appellant’s tax manager. We find that there is adequate support in the record for this conclusion.
 

 The trial court also relied on three other factors: (1) appellant filed with the Tax Court (concerning the 1961 tax year) a motion stating its belief that the original contract income reported in 1964 was properly accrued in that year; (2) appellant failed to file a refund claim for 1965, evidencing the “exclusively protective” nature of the 1960 (via the 1963 carryback) and 1961 (via the 1964 carryback) claims — the limitations period was about to expire for 1963 and 1964, but not for 1965; and (3) two revenue agents and a case manager testified that their allowance of the 1967 deduction was predicated on their understanding, obtained from appellant, that the claims for refund were merely protective and were not being pursued.
 

 The Claims Court also relied upon the decision in
 
 National Casket Co. v. United States,
 
 16 A.F.T.R. 1001 (S.D.N.Y.1934),
 
 aff’d per curiam,
 
 79 F.2d 1004 (2d Cir.1935),
 
 cert. denied,
 
 298 U.S. 672, 56 S.Ct. 937, 80 L.Ed. 1394 (1936), which the court found to be “closely analogous.” In
 
 National Casket,
 
 the taxpayer filed a claim for refund requesting that a deduction be allowed for its 1920 tax year in the event that the deduction was disallowed in 1919. The deduction for 1919 was in fact allowed, which led the court to conclude that no valid claim was filed for 1920 “because the condition on which, in the claim as framed, the taxpayer asked for a deduction of this bonus payment in the year 1920, never occurred.” 16 A.F.T.R. at 1002.
 

 Appellant argues that this case differs from
 
 National Casket,
 
 as there is nothing in “the claim as framed” which made it contingent. While this may be literally true, it is undisputed that the claim led the Service to believe that it was conditioned upon the disallowance of the later deduction and that the taxpayer did nothing to disabuse the I.R.S. of this notion. Given the totality of circumstances surrounding this case, the I.R.S.’s belief that the claim was conditional was certainly reasonable. Appellant had ample opportunity — in drafting its claim and in its other communications with the I.R.S. — to inform the government that the claim was not so conditioned.
 
 [8]
 
 But by using such language as “alternate possibility” and affirming its earlier treatment of the contract income, appellant has drafted a claim that misled the I.R.S. into believing that the allowance of the 1967 deduction would render the 1960 claim moot. Given the purposes of the statute (section 7422(a)) and regulation (section 301.6402-2(bXl)), as detailed below, we do not believe that such a claim for refund is sufficient under law.
 

 In
 
 Union Pacific R.R. v. United States,
 
 389 F.2d 437, 442 (Ct.Cl.1968), the court stated:
 

 The rule that a taxpayer cannot present one ground for refund in its claim and a different ground in its petition is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement
 
 *1209
 
 remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend. [Citations omitted.]
 

 See also Forward Communications Corp. v. United States,
 
 608 F.2d 485, 508 (Ct.Cl. 1979);
 
 Fruehauf Corp. v. United States,
 
 477 F.2d 568, 575 (Ct.Cl.1978).
 

 This case presents the unusual situation where the claim adequately details the facts underlying it, but does not adequately apprise the I.R.S. that the “claim” itself is operative whether or not a later disallowance occurs. If the above purposes for requiring the filing of a claim for refund are to be served, then the Service must be reasonably alerted to the entire basis and purpose of the claim before it. Here, the formal claim filed stated that the taxpayer believed the inclusion in income of the contract proceeds for 1963 through 1965 and a later deduction for 1966 were proper, and the basis for the refund claim (due to the overinclusion of contract income for 1963) was an “alternate possibility.” A fair reading of the claim would, and did, lead the I.R.S. to understand that the claim was only operative if the later deduction was disallowed. The “other evidence” cited by the Claims Court does not, in our opinion, conclusively prove that the claim was conditional, but it does demonstrate that the taxpayer failed to inform the I.R.S. that the claim was not dependent upon the treatment accorded to the later deduction.
 
 [9]
 

 We therefore affirm the Claims Court’s conclusion that the 1960 claim (via the 1963 carryback) must fail.
 

 The 1961 Claim (via the 1964 Carryback)
 

 On November 3, 1978, the United States Court of Claims granted the government’s motion for partial summary judgment in this same action, and dismissed those portions of appellant’s petition relating to the refund claim for 1961 (via the 1964 carryback).
 
 Sun Chemical Corp. v. United States,
 
 218 Ct.Cl. 702. The reason for the court’s holding was that an earlier Tax Court judgment
 
 [10]
 
 (based upon a compromise settlement) involving the 1961 tax year was res judicata for 1961, and therefore further litigation for this year was barred for all issues actually raised and issues that could have been presented.
 

 Appellant is not deterred by the Court of Claims decision on this issue, and seeks to relitigate the question of whether the Tax Court judgment is res judicata on the 1961 claim. Appellant in its brief characterizes the Court of Claims grant of partial summary judgment as “interlocutory” in nature, and therefore subject to reconsideration. The court’s dismissal of the 1961 claim, however, operated as an adjudication upon the merits, Court of Claims Rule 102(bX3), and as a final judgment appealable to the Supreme Court through an application for certiorari.
 
 United Foundation Corp. v. United States,
 
 130 Ct.Cl. 666, 670 (1955). Clearly, the Court of Claims dismissal of the 1961 claim is res judicata and thereby bars appellant from relitigating this issue on appeal to this court.
 

 Conclusion
 

 In summary: (1) the 1960 claim (via the 1963 carryback) is barred by appellant’s failure to file a sufficient claim for refund; and (2) the 1961 claim (via the 1964 carry-back) is barred by res judicata. Accordingly, upon the basis of the parties’ submissions and oral argument, the judgment of the Claims Court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Pursuant to an order of this court dated October 4, 1982, Judge Miller on October 8, 1982, entered final judgment in accordance with his opinion of May 24, 1982.
 

 [2]
 

 . All section numbers refer to the Internal Revenue Code of 1954, as amended, title 26 of the United States Code, unless otherwise stated.
 

 [3]
 

 . At this time the taxpayer was Kollsman Instrument Corporation. Sun Chemical is the successor in interest by merger.
 

 [4]
 

 . The “Changes” clause reads, in pertinent part, as follows:
 

 “The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (i) Drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of shipment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the work required for, the performance of any part of the work under this
 
 *1205
 
 contract, whether changed or not changed by any such order, an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly.”
 

 [5]
 

 . On appeal to this court, appellant has conceded that it is not entitled to any refund on either a loss from 1965 or a carryback from that year. In an earlier proceeding, the United States Court of Claims held that appellant’s 1965 claim was barred because it did not file a timely claim for refund.
 
 Sun Chemical Corp. v. United States,
 
 218 Ct.Cl. 702 (1978).
 

 [6]
 

 . The l.R.S. did, however, deny the 1960 claim (via the 1963 carryback). On February 28, 1972, the Service sent appellant a “30-day letter” containing a copy of the audit examination report. The report reads, in pertinent part, as follows:
 

 “Year Ended 12/31/63
 

 “(C) Claim Denied in Part (1,150,000)
 

 “In a timely claim filed on April 13, 1967 containing two issues taxpayer asserted in * * * the larger issue that 1,150,000 of income accrued on the books and included in the tax return for the year 1963, applicable to the development of Geodetic and Photo Mapping system, was reported as taxable income on the percentage of completion method in error. This claim is denied with respect to this issue inasmuch as it is held that the income was properly included in the year 1963 under Section 451 of the Internal Revenue Code of 1954 and the regulations thereunder. Taxpayer agrees to this adjustment." The report later states, in effect, that the
 

 $3,318,000 deduction claimed in the 1967 return is allowed without adjustment.
 

 [7]
 

 . Appellant has not denied that the refund claims before the court involve part of the amount which constituted the 1967 deduction. Rather, appellant seeks to differentiate between the treatment of the contract income claims and the 1967 deduction by characterizing the former as an “overinclusion-in-income” and the latter as a “deduction.” Our holding in this case, however, does not turn upon the fact that appellant might enjoy a double benefit from the contract losses.
 

 [8]
 

 . There is nothing wrong with filing a conditional claim per se.
 
 See United States v. Kales,
 
 314 U.S. 186, 195-96, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941);
 
 Kellogg-Citizens National Bank v. United States,
 
 330 F.2d 635, 639 (Ct.Cl. 1964). However, if it was found that the claim was subject to a condition precedent and, as here, that condition never occurred, then a conditional claim would not be sufficient under law.
 

 [9]
 

 . The testimony of the revenue agents is not used here, as appellant assumes, for the purpose of “equitably estopping” appellant from asserting an otherwise valid refund claim. Rather, this evidence shows that appellant was content to leave the (otherwise reasonable) impression that its claim was contingent, and that there was no waiver by the I.R.S. of any defects in the formal claim.
 

 [10]
 

 .
 
 Kollsman Instrument Corp. v. Commissioner,
 
 No. 6605-65 (T.C., filed Dec. 8, 1969).