**KAISER CEMENT CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 199–82T.**

United States Claims Court.

April 22, 1985.

Paul H. Dawes, San Francisco, Cal., for plaintiff; George E. Link, Mary E. Butler, and Steven F. Brockhage, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., of counsel.

Kevin B. Shea, Washington, D.C., with whom were Asst. Atty. Gen., Glenn L. Archer, Jr., Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case, as to which the facts are stipulated, is before the court after argument on cross-motions for summary judgment and involves the issue whether foreign subsidiaries of a United States corporation were permitted to avoid the consequences of an amendment to the tax laws reaching their shipping profits for the first year after enactment.

## FACTS

Kaiser Cement Corporation ("plaintiff"), a Delaware corporation, is the common parent and a United States shareholder under Internal Revenue Code § 951(b), 26 U.S.C. § 951(b) (1982) ("I.R.C."), through Kaiser Gypsum Company, Inc., of two Panamanian shipping subsidiaries, Gypsum Carrier, Inc. ("GCI"), and Asian Carriers, Inc. ("ACI"). Both GCI and ACI constitute controlled foreign corporations, as defined in subpart F, I.R.C. § 957(a).

I.R.C. § 951(a), as added by the Revenue Act of 1962, § 12(a), Pub.L. No. 87–834, 76 Stat. 960, 1006 (1962) (the "1962 Act"), includes income of controlled foreign corporations ("CFC's") in the gross income of their United States shareholders by providing in part:

—*If a foreign corporation is a controlled foreign corporation* for an uninterrupted period of 30 days or more during any taxable year beginning after December 31, 1962, every person who is *a United States shareholder* (as defined in subsection (b)) *of such corporation* and who owns (within the meaning of section 958(a)) stock in such corporation on the last day, in such year, on which such corporation is a controlled foreign corporation *shall include in his gross income,* for his taxable year in which or with which such taxable year of the corporation ends—

(A) the sum of—

(i) except as provided in section 963, *his pro rata share* (determined under paragraph (2)) *of the [controlled foreign] corporation's subpart F income for such year....*

(Emphasis added.)

The provisions of subpart F were amended by Congress in the Tax Reduction Act of 1975, Pub.L. No. 94–12, 89 Stat. 26 (1975) (codified at I.R.C. §§ 951–964) (the "1975 Act"). Under § 602(d)(1)(A) of the 1975 Act, shipping profits of CFC's were added to the categories of income subject to subpart F. § 954(a)(4). Section 602(f) provided that the amendments "shall apply to taxable years of foreign corporations beginning

after December 31, 1975, and to taxable years of United States shareholders ... within which or with which such taxable years of such foreign corporations end." 26 U.S.C.A. § 955 note (West 1982).

As of November 30, 1975, GCI and ACI had both changed their annual accounting periods from calendar years to fiscal years ending November 30. The effect of these changes was to start an extra taxable year for purposes of subpart F before December 31, 1975—the effective date of the 1975 Act.

The eligibility requirements and procedures for implementing accounting period changes are governed by I.R.C. § 442, and a history of Treasury regulations, revenue procedures, and amendments thereto.

I.R.C. § 442 provides in pertinent part: "If a taxpayer changes his annual accounting period, the new accounting period shall become the taxpayer's taxable year only if the change is approved by the Secretary...." By its terms section 442 requires all taxpayers to seek prior approval before effecting an accounting period change. Treas.Reg. § 1.442–1 (1976), was promulgated originally in 1957. Before its amendment in 1977, this regulation modified the blanket prior approval requirement of section 442 by providing in pertinent part:

*Change of annual accounting period. —(a) Manner of effecting such change.* (1) *In general.* If a taxpayer wishes to change his annual accounting period ... he must obtain prior approval from the Commissioner by application, as provided in paragraph (b) of this section, or the change must be authorized under the Income Tax Regulations....

(b) *Prior approval of the Commissioner—*(1) *In general.* In order to secure prior approval of a change of a taxpayer's annual accounting period, the taxpayer must file an application on Form 1128 with the Commissioner of Internal Revenue, ... If the short period involved in the change ends after December 31, 1973, such form shall be filed on or before the 15th day of the second calendar month following the close of such short period; ...

(c) *Special rule for certain corporations.* (1) *A corporation* (other than a corporation to which subparagraph (4) of this paragraph applies) *may change its annual accounting period without the prior approval of the Commissioner if all the conditions in subparagraph (2) of this paragraph are met,* and if the corporation files a statement with the district director of internal revenue....

(2) The provisions of this paragraph do not apply unless all of the following conditions are met:

(i) The corporation has not changed its annual accounting period at any time within the ten calendar years ending with the calendar year which includes the beginning of the short period required to effect the change of annual accounting period;

(ii) The short period required to effect the change of annual accounting period is not a taxable year in which the corporation has a net operating loss as defined in section 172;

(iii) The taxable income of the corporation for the short period required to effect the change of annual accounting period is, if placed on an annual basis (see paragraph (b)(1)(i) and (ii) of § 1.443–1), 80 percent or more of the taxable income of the corporation for the taxable year immediately preceding such short period;

(iv) If a corporation had a special status either for the short period or for the taxable year immediately preceding such short period, it must have the same special status for both the short period and such taxable year (for the purpose of this subdivision, special status includes only: a personal holding company, a foreign personal holding company, a corporation which is an exempt organization, a foreign corporation not engaged in trade or business within the United States, a Western Hemisphere trade corporation, and a China Trade Act corporation); and

(v) The corporation does not attempt to make an election under section 1372(a)

that purports to initially become effective with respect to a taxable year which (a) would immediately follow the short period required to effect the change of annual accounting period, and (b) would begin after August 23, 1972.

(Emphasis added.)

Treas.Reg. § 1.442–1(a)(1) set forth the general rule that either specific prior approval to the change must be obtained or the change must be authorized by the regulations. Subsection (b) described the procedures for requesting such approval in those cases where specific prior approval is necessary. Finally, subsection (c)(2) expressly authorized a corporate taxpayer to change its annual accounting period—without prior approval of the Commissioner—provided certain specified conditions were met. It is undisputed that ACI and GCI met all the conditions in subsection (c)(2). However, ACI did not comply with the requirements of subsection (c)(1) by filing a statement with the district director.

Section 442 and Treas.Reg. § 1.442–1 apply to all taxpayers seeking accounting period changes. Although the 1962 Act for the first time brought CFC's under the umbrella of federal tax laws, Treas.Reg. § 1.442–1 was not amended. Rather, the Secretary of the Treasury issued Rev.Proc. 63–7, 1963–1 C.B. 485, which provides:

> The purpose of this Revenue Procedure is to set forth rules for determining the taxable year of a foreign corporation for purposes of section 902(d), sections 951 through 972, and sections 1246 through 1248 of the Internal Revenue Code of 1954, as amended or added by the Revenue Act of 1962. The rules to be followed for such purposes are as follows:

> Rule 1. The taxable year of the foreign corporation shall be determined under section 441 of the Code, and the regulations thereunder, and by treating a foreign corporation which is not subject to United States income tax as though it were a taxpayer within the meaning of section 7701(a)(14) of the Code.

> Rule 2. The taxable year beginning in 1963 of a foreign corporation which has derived income after December 31, 1957, and before January 1, 1963, which is subject to tax under section 882 of the Code shall be the taxable year previously established by such corporation under section 441 of the Code.

> Rule 3. A foreign corporation may adopt a taxable year beginning in 1962 as though such foreign corporation were a new taxpayer within the meaning of paragraph (b)(3) of section 1.441–1 of the Income Tax Regulations, but only if the following conditions are satisfied:
>
> \*      \*      \*      \*      \*      \*

> Rule 4. *A taxable year of a foreign corporation* which has been established or adopted in accordance with this Revenue Procedure *may be changed only with the prior approval of the Commissioner of Internal Revenue in accordance with section 442 of the Code, and the regulations thereunder, and by treating a foreign corporation which is not subject to United States income tax as though it were a taxpayer* within the meaning of section 7701(a)(14) of the Code. *Application for approval to change such taxable year* of a foreign corporation which is not subject to United States income tax *shall be made by one or more of its United States shareholders* (as defined in section 951(b) of the Code) *by filing an application in accordance with the principles of paragraph (b) of section 1.442–1* of the Income Tax Regulations. In general, a change of such a taxable year will be approved if the annual accounting period of the foreign corporation is changed to conform to requirements of foreign law or because bona fide foreign business reasons make such a change necessary or desirable, provided that the other applicable provisions of paragraph (b) of section 1.442–1 are satisfied.

(Emphasis added.)

On November 28, 1975, the IRS issued T.I.R. No. 1421, 1975–52 I.R.B.–28, announcing that it would issue Rev.Proc. 75–

54 on December 29, 1975. The technical release stated that *"[t]he purpose of this Revenue Procedure is to clarify Rev.Proc. 63–7 ... concerning the changing of a taxable year by a foreign corporation."* (Emphasis in original.) Rev.Proc. 75–54, 1975–2 C.B. 595, inserted the following words in Rule 4 of Rev.Proc. 63–7: "A foreign corporation, whether or not a controlled foreign corporation, may not under any circumstances change its taxable year without prior approval of the Commissioner." Section 3 of the 1975 Revenue Procedure, entitled "Effect on other documents" states in part: *"Section 1.442–1(c) of the Income Tax Regulation will be amended to reflect the above clarification."* (Emphasis in original.) No effective date was provided therein either as to the "clarified" Rev.Proc. 63–7 or the promised conforming amendments to the section 442 regulations.

On March 23, 1976, proposed amendments to Treas.Reg. § 1.442–1 were published, 41 Fed.Reg. 12,017 (1976), which were less drastic than the blanket prohibition in Rev.Proc. 75–54 against foreign corporations' changing accounting periods without the Commissioner's prior approval. The final amendments were published on March 3, 1977, 42 Fed.Reg. 12,178 (1977), and subjected only CFC's and foreign personal holding companies to the prior approval requirement. New subsection (5) of amended Treas.Reg. § 1.442–1(c) provides:

A controlled foreign corporation (as defined in section 957) or a foreign corporation that meets the stock ownership requirements of a foreign personal holding company (as defined in section 552) *may change its taxable year only if it secures the prior approval of the Commissioner in accordance with paragraph (b)(1) and (3) of this section.* A controlled foreign corporation or a foreign corporation that meets the stock ownership requirements of a foreign personal holding company that is not subject to United States income tax shall be treated for the purposes of this section

as a taxpayer within the meaning of section 7701(a)(14).

(Emphasis added.)

GCI's and ACI's pre-November 30, 1975 accounting period changes avoided the December 31, 1975 effective date of the 1975 Act. As a consequence, the CFC's accrued no shipping, or subpart F income, for an additional year. Plaintiff correspondingly sought to benefit from GCI's and ACI's change to the extent that for the same additional year it reported no shipping income of either CFC as subpart F income in its 1976 federal taxable income.

During audit the IRS refused to give effect to the 1975 changes in ACI's and GCI's accounting periods and treated the CFC's as if they had remained on a calendar year, rather than a fiscal year basis ending on November 30. The IRS accordingly determined that plaintiff had failed to report $802,330 in its consolidated income tax return for calendar year 1976, representing the subpart F income of GCI and ACI for their taxable years ending December 31, 1976.

Plaintiff paid the additional income taxes and filed amended returns claiming refunds for the taxable year in issue. The claim was denied. On June 17, 1982, plaintiff filed an amended petition in this court seeking recovery of the taxes allegedly overpaid, together with interest thereon. The parties have resolved all issues between them except that concerning the effectiveness under I.R.C. § 442 and the regulations thereunder of GCI's and ACI's accounting period changes.

## DISCUSSION

The issue for decision is whether amended Treas.Reg. § 1.442–1 may be applied retroactively to GCI's and ACI's changes of their accounting periods in 1975. The parties have joined issue, in the first instance, on whether the amendment, and Rev.Proc. 75–54 which preceded it, introduced substantive changes or were mere interpretive rules that did not alter existing law. Defendant takes the position that Rule 4 of Rev.Proc. 63–7 already directed

all CFC's seeking accounting period changes to Treas.Reg. § 1.442–1(b), which sets out the procedure for obtaining prior approval for such changes. Plaintiff contends that Rule 4 directed CFC's to the whole of section 1.442–1, including the exemption from prior approval contained in subsection (c), in the case of CFC's meeting the conditions of that provision.

■ Accepting defendant's interpretation as the common sense reading of Rule 4 of Rev.Proc. 63–7, it is nonetheless settled that a revenue procedure cannot be inconsistent with a Treasury regulation. *Exxon Corp. v. United States*, 212 Ct.Cl. 258, 276 n. 17, 547 F.2d 548, 558 n. 17 (1976); *Fruehauf Corp. v. United States*, 201 Ct.Cl. 366, 374, 477 F.2d 568, 572 (1973). If the Secretary desired to disqualify CFC's from claiming an exemption to which they otherwise would have been entitled under existing regulations, he was required to amend the regulations.

Defendant argues that no such inconsistency between Rev.Proc. 63–7 and Treas. Reg. § 1.442–1(c) is involved in its interpretation of Rev.Proc. 63–7. According to defendant, Treas.Reg. § 1.442–1 did not address the problem of CFC's, since it was promulgated five years before income from CFC's was made taxable by the enactment of subpart F. As an initial response, plaintiff aptly observes that if the unforeseeability of revisions to the Internal Revenue Code *per se* renders all then-existing regulations inapplicable in cases involving revisions, "any coherent and on-going system of taxation" would be jeopardized. Plf's Br. filed Aug. 26, 1983, at 19.[1] Unde-

terred, defendant points out that each condition of section 1.442–1(c) is addressed to a tax-avoidance problem, but that none deals with potential tax-avoidance by CFC's (such a condition might take the form of requiring CFC's to retain that status both before and after the beginning of a changed accounting period) and asserts that the purpose of § 1.442–1(c) would be defeated if CFC's were allowed to make use of the exemption. Under defendant's interpretation of Rev.Proc. 63–7, however, the Secretary went further than to guard against abuse of the exemption by CFC's, consistent with the existing regulatory scheme: He entirely excluded CFC's from eligibility for the exemption.[2] If the Secretary intended to achieve this result through Rev. Proc. 63–7, such action amounted to a substantive change in the rights of CFC's without an amendment to the regulation.

Agreeing with plaintiff that the 1977 amendment to Treas.Reg. § 1.442–1(c) effected a substantive change nonetheless is not determinative of the outcome of this case. The distinction between "legislative" rulemaking and rulemaking that is merely "interpretive" of existing law has been discredited for purposes of analyzing the propriety of according Treasury regulations retroactive effect. *Wilson v. United States*, 588 F.2d 1168, 1171 & n. 11 (6th Cir.1978). The presumption, based on I.R.C. § 7805(b) (1982),[3] that such regulations have retroactive effect applies to legislative, as well as interpretative, rules. *Anderson Clayton & Co. v. United States*, 562 F.2d 972, 984 (5th Cir.1977), *cert. de-*

---

1. Further indicating that CFC's as foreign corporations were covered by Treas.Reg. § 1.442–1, Treas.Reg. §§ 1.952–2(b), (c) (1966), adopted two years after Rev.Proc. 63–7, require that foreign corporations be treated as domestic corporations under section 11 for purposes, *inter alia,* of section 442.

2. Defendant also argues that the requirement in Treas.Reg. § 1.442–1(c) that the district director be notified demonstrates the inapplicability of the regulation to CFC's, because CFC's typically are nontaxpayers and therefore have no district directors. GCI, however, did pay taxes and had a district director. Moreover, Rule 4 of Rev.

Proc. 63–7 itself indicates a solution to the problem by providing that, where necessary, application for prior approval of the Commissioner may be made by a United States shareholder of the CFC, who does have a district director.

3. I.R.C. § 7805(b) provides:
   Retroactivity of Regulations or Rulings— The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

*nied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

Plaintiff argues that according amended Treas.Reg. § 1.442–1 retroactive effect, as defendant urges, would contravene section 4(d) of the Administrative Procedure Act, 5 U.S.C. § 553(d) (1982) (the "APA"), which provides in part: "The required publication or service of a substantive rule shall be made not less than 30 days before its effective date...." It is not contended that the amended regulation should be held invalid because the Secretary failed to comply with the notice provisions of the APA, but that the amendment may not validly be applied retroactively to the changes made by GCI and ACI in 1975. *See* Plf's Br. filed Aug. 26, 1983, at 23 n. 20.

■ Since amended Treas.Reg. § 1.442–1 was promulgated on March 3, 1977, plaintiff argues that the earliest effective date for the amendment permissible under the APA was April 2, 1977. Plaintiff suggests that the Commissioner arguably might be authorized to make the amendment retroactive to the publication of the proposed regulation on April 22, 1976, under certain circumstances (if, for example, defendant had given notice of an intent to make the regulation retroactive). *See Wendland v. Commissioner,* 79 T.C. 355, 379–82 (1982), *aff'd,* 739 F.2d 580 (11th Cir.), & *aff'd sub nom. Redhouse v. Commissioner,* 728 F.2d 1249 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 506, 83 L.Ed.2d 397 (1984). The same argument would apply to any retroactive application of a Treasury regulation. However, in any conflict between I.R.C. § 7805(b) and APA § 4(d), the former, specifically granting the Secretary discretion to apply regulations retroactively, would take precedence over the general notice provisions of the latter. *Redhouse v. Commissioner,* 728 F.2d at 1253. Moreover, Treasury regulations are presumed retroactive not to the date of first notice of their intended promulgation, but to the date of the statute to which they relate. *Id.* at 1251.

■ The Secretary's refusal to give a regulation only prospective force is review-able only for an abuse of discretion. *Redhouse,* 728 F.2d at 1251. This discretionary determination has been overturned in cases wherein, after reenactment of the statute to which a regulation relates, the regulation sought to be modified retroactively has acquired the force of settled law, *e.g., Helvering v. R.J. Reynolds Tobacco Co.,* 306 U.S. 110, 116, 59 S.Ct. 423, 426, 83 L.Ed. 536 (1939); in which inequality of treatment among taxpayers results, for example, from the retrospective application to one taxpayer of a ruling which is applied to another taxpayer only prospectively, *International Business Machines Corp. v. United States,* 170 Ct.Cl. 357, 343 F.2d 914 (1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966); *see also Farmers' & Merchants' Bank v. United States,* 476 F.2d 406 (4th Cir.1973); or in which gross unfairness resulted to a particular taxpayer. *E.g., Conway Import Co. v. United States,* 311 F.Supp. 5, 14–15 (E.D. N.Y.1969) (Commissioner's attempt to impose retroactive record-keeping requirement on taxpayer whose record-keeping was previously approved held to violate duty of fairness and consistency). Plaintiff attempts to fit its case into each of these situations.

■ The so-called legislative reenactment doctrine, under which "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law," *Helvering v. Winmill,* 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938) (upholding Commissioner's decision under long-standing regulation), is inapplicable to situations wherein the Secretary seeks to correct a prior mistaken interpretation of the law. *Helvering v. R.J. Reynolds Tobacco Co.,* 306 U.S. at 116, 59 S.Ct. at 426. That is so even where the taxpayer has detrimentally relied on the prior interpretation. *Dickman v. Commissioner,* 465 U.S. 330, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343 (1984); *Yarbro v. Commissioner,* 737 F.2d 479, 483 (5th Cir.1984), *cert. denied,* —

U.S. ——, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). The court is of the view that the doctrine also is inapplicable to cases, such as the one at bar, in which the Secretary takes occasion from the enactment of a new statute to correct a previous oversight that left available an avenue for deferring tax liability under the new statute. *See Anderson, Clayton & Co.*, 562 F.2d at 984–85 n. 29. The alleged fact that many CFC's in 1962 took advantage of Treas.Reg. § 1.-442–1 and Rev.Proc. 63–7 Rule 3 to defer the effective date of the newly-enacted subpart F hardly compels the conclusion, argued for by plaintiff, that Congress in 1975 affirmatively intended CFC's coming under the 1975 Act for the first time to be similarly indulged. *Pacific National Bank of Seattle v. Commissioner*, 91 F.2d 103 (9th Cir.1937), in which the Commissioner was faulted with failure to apply his own regulation, and *Agway, Inc. v. United States*, 207 Ct.Cl. 682, 524 F.2d 1194 (1975), in which the regulation sought to be applied retroactively specified its own prospectivity, are inapposite.

Plaintiff also contends, citing *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914, and *Farmers' & Merchants' Bank*, 476 F.2d 406, that retrospective application of amended Treas.Reg. § 1.442–1 will result in inequality of treatment between itself and CFC's which changed their accounting periods without prior approval in 1962, because the statute of limitations will have run as to those CFC's, but not as to plaintiff. The purpose of I.R.C. § 7805(b) is to enable the Commissioner to limit retroactivity "to the extent necessary to avoid inequitable results." *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184, 77 S.Ct. 707, 710, 1 L.Ed.2d 746 (1957). Exactly the same inequality of treatment will result from prospective application of the 1977 amendments to CFC's and foreign personal holding companies that try to mitigate their federal tax burden in the future by changing their accounting periods. Inequality of this nature does not present a situation in which "fairness call[s] upon the Commissioner ... to establish a greater measure of equality" *International Business Machines Corp.*, 170 Ct.Cl. at 372, 343 F.2d at 923, such that failure to do so constitutes an abuse of discretion under section 7805(b).

Finally, plaintiff argues that retroactivity in this case is unfair because Treas.Reg. § 1.442–1(b)(1), under which plaintiff was required by the amendments to the regulation to seek prior approval, requires applications to be filed on or before the fifteenth day of the second calendar month following the close of the short period involved in the change—in this case, January 15, 1976. Therefore, plaintiff argues, it was already foreclosed from any possibility of complying with the new prior approval requirement before notice of the proposed requirement was first published on March 23, 1976. The Commissioner already had announced his intention, however, on November 28, 1975, in T.I.R. No. 1421 to amend Treas.Reg. § 1.442–1(c) to require all foreign corporations to seek prior approval before changing their taxable years.

Plaintiff argues that T.I.R. No. 1421 did not constitute adequate notice of the proposed change. The court in *Wendland v. Commissioner*, 79 T.C. 355, 382 n. 15, did not reach the issue whether the news release in that case constituted adequate notice and whether retroactivity to the date of the news release therefore was reasonable. Publication of the proposed rule which was applied retroactively in *Wendland* occurred before the affected transaction. In the circumstances of this case, no unduly harsh results would follow from holding T.I.R. No. 1421 to have constituted adequate notice so that retroactivity to the date of its release is reasonable. No problem of detrimental reliance on prior law, as might have resulted in *Wendland* from inadequate notice, *see Elkins v. Commissioner*, 81 T.C. 669, 681 (1983), is present here. In addition, plaintiff had the opportunity to hedge its bets on both possible outcomes of the rulemaking process. There was nothing to prevent plaintiff from notifying its district director of the change in taxable years, *see supra* note 2,

while simultaneously applying for prior approval therefor. That such an application might have been futile absent the ability to satisfy the test applied under Treas.Reg. § 1.442–1(b) of a business purpose for a change of taxable year is beside the point.

Plaintiff and defendant are to be commended for resolving between themselves most of the issues that were raised by plaintiff's moving brief. Despite its success on the question of regulatory interpretation, plaintiff's well-presented arguments, including those in plaintiff's supplemental brief filed after the case was transferred, cannot overcome the permissible retroactive application of amended Treas. Reg. § 1.442–1(b).

## CONCLUSION

Based on the foregoing, defendant's cross-motion for summary judgment is granted, and plaintiff's is denied. The Clerk of the Court will dismiss the amended petition.

IT IS SO ORDERED.